IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| BENJAMIN ROARK | § | |
| v. | § | CIVIL ACTION NO. 5:12cv60 |
| REGINA FLANERY, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Benjamin Roark filed this lawsuit under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) complaining of alleged deprivations of his rights during his confinement in the Federal Correctional Institution at Texarkana. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. Plaintiff has named eighteen Defendants in his currently active amended complaint. They are: Regina Flanery, dental technician at the Federal Correctional Institution in Texarkana; Dr. Liera Del Toro, a dentist at FCI-Texarkana; Hiram Licon, Health Services Administrator at FCI-Texarkana; Paul Kastner, warden of FCI-Texarkana from 2006 to 2008; David Justice, warden of FCI-Texarkana in 2007; Keith Roy, warden of FCI-Texarkana in 2009; Michael Carvajal, warden of FCI-Texarkana since 2011; G. Maldonado, a regional grievance officer with the Federal Bureau of Prisons; Dr. Michael Pappas, an orthopedic physician; the United States Attorney General; current Director of the Federal Bureau of Prisons C.E. Samuels; former directors Harley Lappin and Kathleen Hawk Sawyer; C-Unit manager Rick Goodsell; associate warden Josh Ibarra; an unidentified individual believed to be B.A. Rhoden; secretary to regional director J.A. Keller; and Harrel Watts, national grievance coordinator.

Roark raises five basic claims in his complaint. These are: (1) unreasonable delay in providing necessary dental care; (2) denial of medical care for hand and arm disabilities; (3) denial of medical care by failing to provide a long-term resident doctor to provide an adequate health care system; (4) violations of the right to receive adequate medical care through overcrowding and systemic understaffing of health care professionals; and (5) failure to provide necessary tools (tables) for disabled prisoners which are necessary for everyday life functions as well as access to programs and services.

The Defendants were ordered to answer the lawsuit and filed a motion for summary judgment, to which Roark filed a response combined with a counter-motion for summary judgment. The Defendants have filed a response to Roark's motion. The Defendants' motion for summary judgment argues that: (1) the Court lacks personal jurisdiction over the defendants Samuels, Watts, Lappin, and Sawyer; (2) Dr. Del Toro has statutory immunity as an employee of the Public Health Service; (3) the statute of limitations has run on many of Roark's claims; (4) Roark failed to exhaust administrative remedies on some of his claims; (5) the Defendants did not violate the Eighth Amendment and were not deliberately indifferent to Roark's medical and dental needs; (6) the overcrowding and understaffing did not result in constitutional violations; (7) Roark has not set out any valid claims of discrimination or due process violations under the Fifth Amendment; (8) claims of *respondeat superior* are not viable in Bivens cases; (9) the Rehabilitation Act does not apply; (10) Roark has not set out a valid claim regarding his writing table and unit assignment; and (11) the Defendants are entitled to qualified immunity.

After review of the pleadings, the Magistrate Judge issued a Report recommending that the Defendants' motion for summary judgment be granted. The Magistrate Judge determined that: the court lacked personal jurisdiction over Samuels, Watts, Lappin, and Sawyer; Dr. Del Toro has statutory immunity from suit; Roark's claims against Justice, Kastner, Sawyer, Flanery, and Del Toro are barred by the statute of limitations; and, Roark's claims that the prison failed to provide a long-term doctor or dentist and the laundry facilities are inadequate were not exhausted.

Turning to Roark's Eighth Amendment claims, the Magistrate Judge concluded that: Roark did not show deliberate indifference to a serious medical need because a dentist, Dr. Kemp, stated that Roark had no medical need for dentures, and Roark received other dental care and treatment while waiting his turn on the denture list. The Magistrate Judge also noted that an orthopedic specialist, Dr. Pappas, evaluated Roark's arm and concluded that tendon surgery would be unsuccessful and further intervention would be cosmetic and not likely to offer significant benefit, meaning that the failure to perform such surgery did not amount to deliberate indifference to a serious medical need.

Although Roark claimed that inadequate staffing of the medical department caused him to be on "dangerous chemical therapy" without a doctor to order "mandatory blood testing," the summary judgment evidence showed that over the period of time about which Roark complained, he had blood drawn on 15 occasions and sent to the lab for analysis, and the lab reports were reviewed by the clinical director Dr. Nash or the regional physician Dr. Russell. In addition, Roark was seen during this time by a nurse practitioner named Allen and thus was not denied access to medical care during the period complained of.

Roark also complained that the "Medical Review Committee" denied him thumb repair without due process, inasmuch as he was never given notice of the decision and thus had no opportunity to appeal. The summary judgment evidence showed that in 1996, a review committee denied a recommendation by an orthopedic consultant that Roark be evaluated by an orthopedic hand clinic. The Magistrate Judge stated that even if Roark could somehow overcome the limitations bar on this claim, he did not show he was entitled to notice or an opportunity to be heard concerning this decision, nor that he had a liberty interest in having the consultant's recommendation carried out. The Magistrate Judge therefore determined Roark did not have a viable due process claim.

Although Roark complained that the prison at Texarkana was badly overcrowded, and the Defendants acknowledged that it operated at well above its rated capacity, the Magistrate Judge stated the courts have held that overcrowding alone does not amount to a constitutional violation,

3

and that Roark did not allege facts showing an excessive risk that he will suffer serious harm as a result of the prison population or that the overcrowding caused him to suffer a constitutional violation.

Roark complained that he was subjected to "discrimination" in violation of the Fifth Amendment when other prisoners were moved up on the denture list in front of him, other prisoners or prisons were provided "adequate medical care with much less crowding/understaffing," and he was denied a writing table. The Magistrate Judge concluded that Roark failed to show that he was the victim of discrimination based on race, religion, or national origin, or membership in any other protected class. To the extent that Roark claimed "class of one" discrimination, the Magistrate Judge determined Roark had offered only bare and conclusory allegations in support of such a claim. Nor did Roark have standing to complain that another inmate, Randall McNeese, lived in a dorm without air conditioning.

The Magistrate Judge stated that Roark's claims under the Americans with Disabilities Act lacked merit because the Bureau of Prisons does not fall into the definition of "programs or activities" governed by the Rehabilitation Act and the ADA does not apply to the federal government. The Magistrate Judge also stated that *respondeat superior* liability does not apply in Bivens actions, Roark had no liberty interest in having his grievances answered to his satisfaction, Roark failed to set out a viable retaliation claim, and the Defendants are entitled to qualified immunity. The Magistrate Judge therefore recommended that the Defendants' motion for summary judgment be granted and that Roark's claims be dismissed.

**Roark's Objections**

**A. Dental Care**

In his objections, Roark argues that he was placed on the denture waiting list in 2005, not 2007. Even though he was restricted to chewing with only his front teeth, he kept being told to wait his turn. He filed a habeas petition and wrote to the U.S. Justice Department, but to no avail. Roark asserts the dental waiting list was being manipulated and that he had a serious medical need. As the

Magistrate Judge stated, Dr. Kemp stated that Roark had no serious medical need for dentures. Roark's disagreement with the dentist's assessment does not show deliberate indifference to a serious medical need. This objection is without merit.

In a related objection, Roark asserts that Dr. Kemp made the statement about his dentures in 2011, but that he, Roark, did not see a contract dentist in 2007. This meant no one made a determination in 2007 that Roark had not shown a necessary medical need for dental prosthetics. However, Roark then contends that his "teeth were worn to mere nubs" by the time Dr. Kemp saw him. According to Roark, his teeth deteriorated between 2007 and 2011, and he does not explain how he could have had a necessary medical need for dental prosthetics in 2007 but not in 2011, when he asserts his teeth were in much worse shape. This objection is without merit.

Roark also claims "it is obvious that prison officials told Dr. Kemp to state on the record that plaintiff had no medical need for dentures." He states denture fabrication began the very next month, which is "rather fast for a person with no medical need for dentures." Roark offers nothing to support his speculation that Dr. Kemp was told by prison officials to say that he had no medical need for dentures, and his speculation does not form the basis of a valid objection. *See, e.g.,* Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1166 (5th Cir. 1993) (speculation is insufficient to create a genuine issue of material fact); Freeman v. Sims, 558 Fed.Appx. 412 (5th Cir., March 7, 2014) (conclusory and speculative assertion was insufficient to show that the district court erred in granting summary judgment). Roark's dental records show that his turn on the waiting list came up in January of 2012 and denture fabrication began at that time. This objection is without merit.

Roark cites Bureau of Prisons Program Standard 6400.02, which provides that emergency dental care includes treatments for relief of severe pain, sedative fillings, extractions of non-restorable teeth, and gross debasement of symptomatic areas, and non-emergency dental care, which is provided as resources of staff, time, and materials are available, and commensurate with the inmates' ability to maintain good oral health. He states that the failure to provide sufficient dental

5

staff coverage to make reasonable non-emergency but necessary care available over a period of years amounts to deliberate indifference.

Roark's dental records show that prior to the filing of this lawsuit, he received dental care on a number of occasions, including treatment for an abscessed tooth, no. 12; extraction of non-restorable tooth no. 18; treatment for an infection in tooth no. 2 and a subsequent extraction of that tooth; two comprehensive dental exams including X-rays, a review of his oral hygiene index and dental history, and a review of his treatment plan; an extraction of the residual root of tooth no. 17; a preliminary alginate impression of the lower arch for fabrication of mandibular acrylic dentures; and final impressions taken for the lower partial dentures and upper alginate impressions taken for occlusion match. The Fifth Circuit has held the fact medical care given is not the best that money can buy does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992); *see also* Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs). The medical and dental care received by Roark may not have been the best money could buy, but it did not fall below the level of deliberate indifference to serious medical needs. *See* Stewart v. Murphy, 174 F.3f 530, 534 (5th Cir. 1999).

Roark contends he provided "clear and convincing evidence" of his "necessary need for dentures," which he claims is "enough evidence to support a finding that discovery will reveal the necessary elements." Roark does not explain what he believes additional discovery will reveal, and his speculation is not an adequate objection to the Magistrate Judge's Report. *See generally* Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (parties opposing summary judgment "may not simply rely on vague assertions that additional discovery will produce needed but unspecified facts.") This objection is without merit.

**B. Medical Care**

Roark claims the medical staff was untrained and unsupervised in hepatitis chemotherapy treatment, although he offers no facts to support this conclusion. He does not dispute he saw the physician's assistant, but states this physician's assistant was the only one to provide care for some 1800 prisoners. These allegations do not themselves show Roark suffered deliberate indifference to his serious medical needs or that the Magistrate Judge's conclusion was otherwise incorrect. Roark's objection on this point is without merit.

With regard to his hand, Roark states he was referred to a "hand specialist" in 1996 who recommended testing and possible reconstructive surgery, but the medical utilization committee made a determination that evaluation at the hand clinic was not necessary; he complains this decision was made without any testing to even make an informed judgment, and no notice of denial was ever received.

The summary judgment evidence shows Roark was seen at six-month chronic care clinics between April of 1997 and December of 2008, but there is no indication he complained of his hand injury or requested treatment for this condition in any of these visits. In February of 2009, orthopedic specialist Dr. Pappas evaluated Roark's right wrist and determined that tendon surgery would be unsuccessful and further intervention would be cosmetic and unlikely to offer significant benefit.

The medical utilization committee's disagreement with the orthopedic consultant in 1996, sixteen years before Roark filed suit, does not give rise to a federal cause of action, even if Roark could somehow overcome the limitations bar. He has not shown that he was entitled to notice or an opportunity to be heard, nor that he had a liberty interest in having the orthopedic consultant's recommendation carried out.

In this regard, Roark asserts he had a liberty interest because denial of necessary medical care without any testing exceeds his sentence in such an unexpected manner as to give rise to due process protections by its own force, citing Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). He maintains

that "secret denial of further evaluation at a hand clinic denied him a quality of life," and this secret denial also denied any possibility of treatment for a serious medical need determination, which Roark states is a right guaranteed by the Constitution.

In Cooleen v. Lamanna, 248 Fed.Appx. 357, 2007 WL 2687319 (3rd Cir., September 14, 2007), the plaintiff, federal prisoner Timothy Cooleen, complained, *inter alia*, that he was denied due process when the Utilization Review Committee initially rejected an MRI which had been recommended by an orthopedic specialist. The committee also cancelled an appointment with an neurosurgeon. In affirming the district court's denial of this claim, the Third Circuit stated as follows:

> We agree with the district court that Cooleen cannot show the violation of a constitutionally protected liberty interest regarding the medical treatment he received or the Utilization Review Committee's decisions concerning certain procedures. *See* Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (procedural due process protects only against a government action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). We need not reach the issue of Cooleen's opportunity to challenge the Committee's decisions.

Similarly, Roark cannot show the violation of a constitutionally protected liberty interest with regard to the medical review committee's decisions concerning certain procedures. Although Roark complains that the committee did not itself conduct tests before making its decisions, there is no indication that the review committee is a testing body; rather, the medical records show that the committee rejected the recommendation because it was "medically acceptable but not medically necessary." The Constitution does not require that every recommendation made by a medical consultant be accepted and acted upon, and the denial of such a recommendation is not an atypical and significant hardship in relation to the ordinary incidents of prison life, nor did it exceed his sentence in such an unexpected manner as to give rise to due process protections by its own force. This objection is without merit.

Roark states that even if he did have 15 blood tests, he "had to fight and argue for most of those." He also asserts he had more than 15 blood draws, but some of these were never sent in for testing or were "rotten when they reached the lab." The summary judgment evidence shows Roark

8

had 15 blood draws in which the lab results were reviewed by a physician, even if there were others which were not. He has failed to show deliberate indifference in this regard, and his objections on this ground are without merit.

## C. Overcrowding

Roark complains that Wardens Roy and Carvajal and Health Services Administrator Licon allowed grossly overcrowded prison conditions and failed to provide an adequate healthcare system. He claims records show these individuals knew of a substantial risk to prisoners' health or safety and that the Court has personal jurisdiction over these defendants. He states Regina Flanery was "personally responsible for maintaining [an] accurate, unbiased denture list, which the lack of contributed for waiting almost 10 years on the waiting list for dentures." The summary judgment evidence shows that the dentist, Dr. Kemp, determined Roark did not have a medical need for dentures, meaning that his claims concerning dentures do not show deliberate indifference to a serious medical need. Nor has Roark shown that the alleged deficiencies in the healthcare system subjected him to deliberate indifference to a serious medical need. Roark's objections in this regard are without merit.

Roark further argues that the fact the prison in Texarkana remained accredited with the American Correctional Association and the Joint Commission on Accreditation of Health Organizations is irrelevant, citing Gates v. Cook, 376 F.3d 323, 337 (5th Cir. 2004) as stating that the federal courts should not subvert their judgment on Eighth Amendment violations to the ACA and that ACA inspections are not factual findings binding on the court, although compliance with ACA standards may be a "relevant consideration." The Magistrate Judge recounted the Defendants' assertion that FCI-Texarkana remained accredited with the ACA and JCAHO, but did not ascribe any legal significance to this fact, much less hold that such accreditation was proof that Eighth Amendment standards were not violated. Roark's objection on this ground is without merit.

**D. Limitations**

Roark objects to the dismissal of "all claims" based on the statute of limitations, arguing that the "continuing tort" doctrine allows his claims to continue. The Magistrate Judge did not recommend dismissal of "all claims" based on limitations and specifically discussed the "continuing tort" doctrine, stating "Roark's overall claims that he was denied dentures and care for his hand over a period of years sufficiently alleges a continuing tort as to accrue when he received dentures in 2012."

However, the Magistrate Judge went on to state that claims against individual Defendants who had left Texarkana or the Bureau of Prisons more than two years before the filing of the lawsuit were barred by limitations even under the continuing tort doctrine because any actions taken by these individual Defendants with regard to Roark necessarily ceased more than two years prior to the filing of the lawsuit. These Defendants included Justice, Kastner, Sawyer, Del Toro, and Flanery. While the overall course of conduct may have continued, the individual who had left could not be held liable for the later actions taken by others. Roark does not address this conclusion by the Magistrate Judge, and in fact cites case law stating that "a cause of action for a continuing tort does not accrue until the defendant's tortious conduct ceases." Arquette v. Hancock, 656 S.W.2d 627, 629 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.). This is consistent with the Magistrate Judge's determination that the allegedly tortious conduct of the defendants who left ceased upon their departure. Roark's objections in this regard are without merit.

Roark alleges he "was not aware of the injury or that the damage to his remaining teeth was irreparable" until the examination by Dr. Kemp in November of 2011. However, Roark's pleadings make abundantly clear that he had complained about his teeth and the lack of dentures to prison authorities long before 2011. In any event, the Magistrate Judge stated that Roark's claim concerning his dental care was not barred by limitations. These objections are without merit.

**E. Exhaustion of Administrative Remedies**

Roark acknowledges that "the Magistrate Judge confirms proper exhaustion of administrative remedies pursuant to denial of dental care, denial of medical care for the right arm/hand, overcrowding effecting an adequate health care system, denial of writing tables and/or auxiliary aids for this disabled prisoner, and his transfer to many times worse living conditions for requesting a table." He goes on to state that as to the laundry facilities, hallways, closing of the yard and other deficiencies, these were only meant as supporting facts for the institution's "antiquated design" and the effects of the overcrowding on this antiquated design.

Roark argues he tried to exhaust his administrative remedies on the lack of a full time doctor, but he was unable to do so because Licon would not address his informal attempt at resolution. When he tried to file formal grievances anyway, these were rejected because there was no record of an attempt at informal resolution.

The Fifth Circuit has held that conclusory allegations that an inmate filed a grievance appeal which was never returned do not create a genuine dispute as to exhaustion. Kidd v. Livingston, 463 Fed.Appx. 311, 2012 WL 614372 (5th Cir., February 28, 2012), *cert. denied*, 133 S.Ct. 36 (2012); *citing* Freeman v. Texas Department of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004); *see also* Mentecki v. Corrections Corp. of America, 234 F.3d 1269, 2000 WL 1648127 (6th Cir., October 27, 2000) (speculative and conclusory assertion that filing a grievance would be futile does not satisfy the exhaustion requirement). Roark has offered only conclusory allegations that he was unable to exhaust administrative remedies on all of his claims. Similarly, Roark claims that the commencement of denture fabrication the next month is "rather fast for a person with no medical need for dentures," but the summary judgment evidence shows that Roark had reached the top of the denture waiting list at that time. These objections are without merit.

**F. Other Objections**

Roark states he is a layman at the law and a showing of personal jurisdiction is almost impossible, and has no objections to the dismissal of Samuels, Watts, Lappin, and Sawyer for lack

11

of personal jurisdiction. He also offers no objection to the dismissal of Dr. Del Toro on the basis of statutory immunity.

Roark also states he wishes to dismiss his Fifth Amendment discrimination claim with regard to dental care and his Fifth Amendment class-of-one claim regarding denial of access to a table, and to dismiss his claims against any unidentified defendants.

Next, Roark complains that the Magistrate Judge discounted the affidavits given by Roark himself and by inmates Maynard Brown, William Brown, and Brady Long. He contends these affidavits are "circumstantial evidence of systemic medical understaffing contributing to an inadequate health care system." The Magistrate Judge observed that Roark included affidavits from a number of other prisoners and discussed several of these affidavits, but concluded that neither Roark's affidavit nor those of the other prisoners showed Roark suffered a constitutional violation. Roark has not controverted this conclusion, and his objection on this point is without merit.

Dr. Pappas was previously dismissed from the lawsuit for failure to effect service of process. Roark contends that Dr. Pappas has not been served with process because he is "hiding" from the lawsuit. According to Roark, Dr. Pappas was tracked by Google to Arizona, where he was dismissed from his job, got another one, was dismissed from there, and went to a sports clinic in Minnesota, and was dismissed from there. Even if true, this does not vitiate the obligation of the Plaintiff to effect service of process. *See* Systems Signs Supplies v. U.S. Department of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990) (litigant's *pro se* status does not excuse failure to effect proper service); Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1988) (responsibility of effecting service of process rests, at the end of the day, with the plaintiff). In addition, Dr. Pappas' evaluation of Roark was done in 2009 and thus falls outside of the limitations period. Roark's disagreement with Dr. Pappas' assessment of his condition does not set out a constitutional claim in any event. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Roark's objection on this point is without merit.

Finally, Roark contends that the Defendants are not entitled to qualified immunity and that the Defendants Goodsell, Carvajal, and Ibarra were directly involved in denying him reasonable

accommodations. Once qualified immunity is invoked, Roark has the burden of rebutting its applicability by showing that the official's conduct violated a constitutional or statutory right and the official's actions constituted objectively unreasonable conduct in the light of clearly established law at the time of the conduct in question. Tolan v. Cotton, 713 F.3d 299, 304 (5th Cir. 2013). Roark has not met this burden and his objections are without merit.

The Court has conducted a careful *de novo* review of all of the pleadings and records in this case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 119) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' motion to dismiss or for summary judgment (docket no. 103) is **GRANTED** and the Plaintiff's counter-motion for summary judgment (docket no. 110) is **DENIED.** It is further

**ORDERED** that the above-styled civil action be and hereby is **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED.**

**SIGNED this 9th day of September, 2014.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE